**Kathleen THOMAS**

v.

**VERTICAL BUILDING SERVICE CO.**

**No. CA 3–76–1506–C.**

United States District Court,
N. D. Texas,
Dallas Division.

March 26, 1979.

A. D. Emerson, Shwiff, Caraway & Emerson, Dallas, Tex., for plaintiff.

Tom J. Stollenwerck, Moore, Peterson, Bauer, Williams & Stollenwerck, Dallas, Tex., for defendant.

### MEMORANDUM OPINION

WILLIAM M. TAYLOR, District Judge.

This is an employment discrimination suit in which Plaintiff has charged Defendant with paying her less money than her male co-workers who were performing substantially the same work, and with retaliating against her for filing her initial charge with the Equal Employment Opportunity Commission.

Jurisdiction is premised on Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e et seq. Plaintiff filed her initial charge alleging an ongoing violation of this act during the time when she was employed by Defendant and filed her second charge a week after the incident occurred out of which the second charge arose. Also, a Notice of Right to Sue was issued by the District Director of the E.E.O.C. on August 27, 1976, and Plaintiff filed this suit on November 22, 1976, less than 90 days after the issuance of the right to sue letter. Based on these findings, the Court concludes that it has jurisdiction over this cause of action and the parties to the suit.

Defendant is in the business of building maintenance—the cleaning of, dusting of, waxing of, and removing of trash from office buildings. Plaintiff, before her termination as an employee of Defendant, was classified as a housekeeper, a supervisory position.

Plaintiff attempted to show prima facie that she was discriminated against as to wages by showing that the male housekeepers were paid more per hour than she was. Other than one male, Wycough, who had been hired part-time a month before she terminated her position, there were five housekeepers employed by Defendant, including Plaintiff. One, a male, Gossage by name, was earning $3.40 per hour. Another female, Johnson was earning $2.85 per hour. Two, a male, Dixon, and a female, Lee, were earning $2.80 per hour. Plaintiff was earning $2.85 per hour.

That one male was making far more per hour than the other housekeepers is very slim evidence with which to establish a prima facie case of discrimination, particularly when the only other male in the comparable group was making less than Plaintiff.[1] Statistics in such a small group do not mean much unless a clear pattern is discernable.

Moreover, Defendant's President, Guy Poland, testified that Gossage was in charge of a new building that was larger than the other buildings that Defendant had contracted to maintain. He also testified that this contract was very important to Defendant's future. So, he picked the best employee possible to oversee the maintenance of the building and accordingly paid him more money. There was no evidence presented at trial by Plaintiff to challenge this testimony. So the Court finds that Gossage's higher salary is no evidence of discrimination against Plaintiff as to salary.

There was garbled testimony as to just how much Plaintiff was actually making per hour. This is apparently due to an arithmetical error. The clear testimony was that there was some discussion of putting Plaintiff on a flat salary of $500 per month. This was based on a normal 48-hour work week. It was intended by Defendant's President that Plaintiff be paid at the equivalent salary to her then present wage rate of $2.85 per hour. From the testimony on the witness stand, the Court deduces that Mr. Poland or someone else incorrectly multiplied out the wage per hour times hours per week times weeks per month which does not come out to $500 per month flat salary.[2] There was quite some confusion about this at trial but there is nothing in the record to suggest anything other than an inadvertent error in arithmetic.

Beyond this, the time sheets for the last two weeks that Plaintiff was employed by Defendant were introduced and clearly show that she was paid at the rate of $2.85 per hour.

The evidence is clear that Plaintiff orally notified Mr. Poland that she was quitting with two weeks notice on November 8, 1974, and then filed her initial complaint with the E.E.O.C. on November 15, 1974. The events after this are in dispute.

Plaintiff testified that a couple of days before her last day of work that she had a conversation with Mr. Poland at which she thought one or two other persons were present including one P. J. Titus. She testified that she was told by Mr. Poland that if she would drop her charge with the E.E.O.C. that she could continue working for Defendant.

Mr. Poland's testimony was that such a conversation had occurred but that he had informed Plaintiff that her voluntary resignation had been accepted and that she could

[1]  Mr. Wycough was employed October 7, 1974, at a wage rate of $3.00 per hour. The Court does not consider this significant as the housekeepers had had a raise in June, 1974, and, other than Gossage, were given raises on January 1, 1975. At that time, Lee and Dixon were raised to $2.90 per hour and Johnson was raised to $3.00 per hour. This small time period where Mr. Wycough was earning a higher wage is insignificant.

[2]  $2.85 per hour $\times$ 48 hours per week $\times$ 4⅓ weeks per month = app. $558.

continue on with her claim if that were her desire.

The deposition of Mr. Titus was introduced at trial. At the time of the taking of his deposition, he had not worked for Defendant for almost two years and he did remember a conversation between Mr. Poland and Plaintiff about her charge and termination. His testimony was clear that Mr. Poland never in that conversation made any statement that she should drop her charge and that he would then allow her to continue working for Defendant.

Based on this evidence it is clear that Plaintiff's resignation was voluntary.

Plaintiff has failed to sustain her burden of proof as to both charges so the Court concludes that it must enter judgment for the Defendant in this civil action. Defendant's attorney is requested to prepare and submit appropriate form of judgment.